IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES HENRY NEWCOMB, JR,

Plaintiff,

v.                                                    Civil Action No. 2:14-cv-76

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

### A. Background

On September 18, 2014, James Henry Newcomb, Jr. ("Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIP") under Title II of the Social Security Act. ECF No. 1. The Commissioner filed her answer on November 25, 2014. ECF No. 6. Plaintiff then filed his motion for summary judgement on January 23, 2015. ECF No. 11. The Commissioner filed her motion for summary judgement on February 19, 2015. ECF No. 13. The motions are now ripe for this Court's review, and for this report and recommendation.

### B. The Pleadings

    1.      Plaintiff's motion for summary judgement. ECF No. 11.

    2.      The Commissioner's motion for summary judgement. ECF No. 13.

### C. Recommendation

I recommend that:

    1.      Plaintiff's motion for summary judgment be **DENIED** because, based on the VE's proper testimony, substantial evidence supports the ALJ's finding that

Plaintiff can "perform light work . . . except he must be able to alternate between sitting and standing in place every one-half hour . . . ." R. 16.

2.      The Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

### A. Procedural History

On November 29, 2011, Plaintiff protectively applied for DIB alleging a disability beginning on September 20, 2009. R. 11. Plaintiff's claims were initially denied on March 5, 2012, and upon reconsideration on April 24, 2012. R. 80-84, 88-90. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and, on January 16, 2014, an ALJ hearing was held before ALJ Maria Alexander Nunez. R. 26-63. Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). *Id.* On January 30, 2014, the ALJ found Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 20, 2009, the alleged onset date, through March 31, 2011, the date last insured." R. 20. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on July 24, 2014. R. 1-4. Plaintiff then timely brought his claim to this Court.

### B. Medical History

Because Plaintiff is only narrowly challenging the ALJ's RFC finding and its use as substantial evidence in this matter, much of the medical evidence is not material to this Court's analysis. However, the undersigned has throughly reviewed the medical record and its basis for the ALJ's hypothetical questions and RFC determination.

### C. Testimonial Evidence

Testimony was taken at the ALJ hearing held on January 16, 2014. R. 26-63. The following

portions of the testimony are relevant to the disposition of this case.

1. Plaintiff's Testimony

The hearing began with questions for Plaintiff by the ALJ. Plaintiff testified that he was fifty-four years old on the date of the hearing. R. 31. Plaintiff is single and testified that he lives with his two adult children. *Id.* Plaintiff testified that he has received a GED and is able to read and write. *Id.* Plaintiff stated that he is able to solve simple math problems, such as addition and subtraction. R. 32-33. Plaintiff previously served in the Army and receives VA disability benefits every month. R. 33.

Plaintiff testified that he stopped working in 2009 after experiencing an aneurysm. *Id.* Prior to his aneurysm, Plaintiff "was a counselor at Extreme Sports, and . . . transported children to and from school as part of their before and after school program." R. 34. As a counselor, he occasionally lifted sixty pound punching bags. *Id.* Before his work as a counselor, Plaintiff testified that he had worked in the food service industry, at a chair manufacturing company, and as a security guard. *Id.* Plaintiff's responsibilities at the chair manufacturing company included "[a]ssembling custom stairs . . . putting them together, [and] cutting pieces to fit." R. 35. Plaintiff worked at the chair manufacturing company for six months. *Id.* At this position, he stated that he, in tandem with other employees, would lift 300 to 400 pounds. R. 36. In his food service positions, Plaintiff testified that he mostly worked in "food prep," which included dishwashing and stocking shelves. *Id.*

On the date of the hearing, Plaintiff testified that he believed his medical conditions have gotten worse. R. 39. Plaintiff testified that he has "become fatigued a lot more" and if he "stand[s] for long periods of time [his] arms go numb." *Id.* Plaintiff also stated that he experiences severe back pain after standing for long periods of time. *Id.* In 2011, Plaintiff stated he was taking Ibuprofen for

back pain. R. 40. Plaintiff described his back pain as "chronic." *Id.* After taking medication, Plaintiff testified that his pain "doesn't actually go away. It just dulls." *Id.* Between 2009 and March 2011, Plaintiff testified he was able to stand for twenty to thirty minutes before needing to sit down. R. 42. During that time, Plaintiff stated that he could lift fifty pounds comfortably. *Id.*

During the same period, Plaintiff testified that he experienced constant headaches. R. 42-43. Plaintiff testified that he was prescribed medications, but they only "dulled the pain. It never actually ever took it away." R. 43. Plaintiff claimed that he experienced "a little nausea" from his medications. R. 44. Before March 31, 2011, on a scale from zero to ten, Plaintiff testified that his headache pain was usually a "four or five." R. 43. Plaintiff also testified that he experienced mild pain in his right arm, but was still able to lift forty to fifty pounds. R. 44.

Plaintiff testified that he rested everyday. *Id.* In a twelve hour period, Plaintiff testified that he reclined, on average, five to seven hours. R. 45. Between September 2009 and March 2011, Plaintiff testified that he showered and dressed himself everyday. *Id.* Plaintiff also stated that he cooked meals and washed dishes four to five time a week. R. 46. Plaintiff testified that he swept, mopped, and vacuumed "from time to time." *Id.* Plaintiff stated he cleaned his house once a week and washed clothes three times a week. R. 46-47. Plaintiff testified that he drove to the hearing, and, on average, drives three times a week. R. 47. Plaintiff testified that he reads two to three hours a day and watches television for another two to three hours a day. R. 47-48. Before March 31, 2011, Plaintiff stated that he would visit nearby family members five to six times a week. R. 49-50. During this period, Plaintiff stated that he attended church every Sunday and shopped for groceries once a week. R. 50.

Next, Plaintiff was examined by his attorney. Plaintiff testified that, after his aneurysm, he

experienced shortness of breath while sitting and could only walk 100 yards before again having shortness of breath. R. 51. Before March 2011, Plaintiff testified that he suffered from sleep apnea and only averaged six hours of sleep a night. *Id.* Plaintiff stated that he would fatigue whenever he began any physical activity. R. 52. Additionally, before March 2011, Plaintiff stated that he "couldn't stay focused for real long time . . . [had] a little more difficulty staying focused" and was distracted easily. R. 52-53. Plaintiff stated that, before March 2011, he experienced memory problems, such as forgetting where he placed items. R. R. 53-54. During this time, he stated that he could "probably" carry twenty to thirty pounds consistently, but only fifty pounds "every now and then." R. 54.

## 2. The VE's Testimony

A VE also testified at the hearing. R. 56. During her testimony, the VE described the characteristics of Plaintiff's past work. First, the VE described Plaintiff's food service work as unskilled medium work "with an SVP of 2." R. 57. The VE described Plaintiff's work at a manufacturing plant as semi-skilled medium work "with an SVP of 3." *Id.* From this position, the VE stated that "there would be no really directly transferable skills . . . ." *Id.* Next, the VE described Plaintiff's work at a convenience store as semi-skilled light work "with a SVP of 3." *Id.* However, the VE stated that Plaintiff's convenience store work is actually "medium [work] as [Plaintiff] described it." *Id.* The VE described Plaintiff's work as a counselor as medium semi-skilled work "with an SVP of 5 . . . because of the equipment he handled." *Id.* Additionally, because a part of Plaintiff's counselor work involved driving, the VE explained that driving is medium semi-skilled work "with an SVP of 3." R. 57.

Next, the ALJ posed the following hypothetical to the VE:

> For the first hypothetical question I'd like to further assume that I find the claimant's testimony credible and that the individual has all the limitations the claimant described including no limitation with respect to sitting.
>
> The ability to stand at one time for 20 to 30 minutes. To walk at one time for six blocks. To lift 20 pounds. The need to recline in a recliner or lie down during three to four hours each day.
>
> The individual would also be limited to unskilled work. Given those and the other limitations described by the claimant, would the individual be able to perform any of the claimant's past work?

R. 58. The VE testified that, in her opinion, the hypothetical individual would not be able to perform any of Plaintiff's past work. *Id.*

The ALJ then proposed a second hypothetical:

> For the second hypothetical question I'd like you to further consider the following. The individual is occasionally able to lift and or carry including upward pulling 20 pounds, and frequently lift and or carry including upward pulling 10 pounds.
>
> The individual is able to sit for six of eight hours and stand and or walk for six of eight hours but would need to be able to alternate between sitting and standing in place every half hour.
>
> The individual could occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, crouch and crawl. The individual would never be able to climb ladders, ropes or scaffolds.
>
> Would . . . need to avoid all hazards including machinery and heights, or dangerous machinery and heights. And would need to avoid concentrated exposure to fumes, odors, dust, gases or other pulmonary irritants.
>
> The individual would be capable of performing unskilled work or work with an SVP of no more than two, in a non-production oriented work setting with no more than occasional interaction with public, co-workers and supervisors. Given those limitations would the individual be able to perform any of the claimant's past work?

R. 59-60. The VE stated that the hypothetical individual would not be able to perform any of Plaintiff's past work, however, there would be other work in the local or national economy that the hypothetical individual could perform. R. 60. The VE listed three exertionally light and unskilled jobs that would qualify under the ALJ hypothetical: (1) office helper; (2) mail clerk; and (3) garment sorter. *Id.*

In a third hypothetical, the ALJ asked the VE "if [the ALJ] were to change the limitation with respect to interaction with the public to no interaction with the public, but keep the occasional interaction with co-workers and supervisors. Would that individual still be able to perform those jobs?" R. 60-61. The VE stated that the hypothetical individual would still be able to perform the previously listed exertionally light and unskilled jobs. *Id.*

Next, Plaintiff's counsel examined the VE. R. 61. During the examination, the VE testified that the amount of sitting needed in the jobs listed after the ALJ's second hypothetical were "closer to the light range" than the sedentary range. *Id*. Lastly, Plaintiff's counsel asked the VE that "if an individual were limited to . . . standing and walking two hours in an eight hour day, what type of jobs would remain?" *Id.* The VE responded that no jobs in the light category would remain, instead, only sedentary work would be available R. 61-62.

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff had not "engaged in substantial gainful activity during the period from his alleged onset date of September 20, 2009 through his date last insured of March 31, 2011." R. 13. At step two, the ALJ found that, "[t]hrough the date last insured [Plaintiff] had the following severe impairments: vertigo and fatigue as residuals of a brain aneurysm, obesity, degenerative joint disease/arthritis, personality disorder, not otherwise specified (NOS) and mood disorder NOS." *Id.* At the third step, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. R. 14." R. 14. Before considering step four of the sequential

evaluation process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> [H]e must be able to alternate between sitting and standing in place every one-half hour, he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, he can never climb ropes, ladders, or scaffolds or be exposed to hazards including machinery and heights, he must avoid concentrated exposure to fumes, odors, dust gasses, and other pulmonary irritants, he is capable of performing unskilled (SVP2) work with no interaction with the public and no more than occasional interaction with co-workers and supervisors.

R. 16. At step four, the ALJ found that Plaintiff "through the date last insured . . . was unable to perform any past relevant work." R. 19. However, at the final step, the ALJ found that considering Plaintiff's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed." *Id.*

## IV. MOTIONS FOR SUMMARY JUDGEMENT

### A. Contentions of the Parties

In this case, Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence. Plaintiff argues that the ALJ failed to "provide a complete, accurate function-by-function analysis when she articulated her controlling hypothetical question and when she made her RFC finding. . . . As a consequence, her final decision is not supported by the VE testimony which was given in response to an inadequate, incomplete hypothetical question." ECF No. 12 at 12. The Commissioner argues that "[b]ecause the hypothetical question accurately reflected Plaintiff's functional limitations, the ALJ reasonably relied upon the [VE's] testimony to find Plaintiff not disabled." ECF No. 14 at 10.

### B. The Standards

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C.

§§ 405(g), 1383(c)(3).

## C. Discussion

At issue in this case is the ALJ's RFC finding that Plaintiff had the "capacity to perform light work as defined in 20 CFR 404.1567(b) except he must be able to alternate between sitting and standing in place every one-half hour . . . ." R. 16. Under the regulations, light work is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). "To be considered capable of performing a *full or wide range* of light work" a claimant "must have the ability to do substantially all the activities" described in § 404.1567(b). *Id.* (emphasis added). As to sitting and standing, a "*full range* of light work requires" a claimant to stand or walk, "off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (emphasis added). SSR 83-10 notes that "a good deal of walking or standing" is "the primary difference between sedentary and *most* light jobs." *Id.* at *5 (emphasis added).

In this case, the ALJ's determined in her RFC that Plaintiff needed an alternate between sitting and standing every half hour. R. 16. SSR 83-12 considers alternate sitting and standing limitations a "special situation[]." SSR 83-12, 1983 WL 31253, at *4. Further, SSR 83-12 notes "that an individual with a sit-stand requirement may not meet the definition of either the sedentary or light work classifications." *Golini v. Astrue*, 483 F. App'x 806, 807-08 (4th Cir. 2012) (citing SSR

83-12 at *4).[1]

As stated previously, to perform a *full* range of light work, a claimant must be "standing or walking" for "6 hours of an 8-hour workday." SSR 83-10 at *6. Based on Plaintiff's RFC, Plaintiff would not be able to walk or stand for 6 hours in a workday because he "must be able to alternate between sitting and standing in place every one-half hours." R. 16. At most, Plaintiff could walk or stand only 4 hours in an 8 hour workday. Therefore, it is clear that the ALJ in this case found that Plaintiff could not perform a full range of light work. However, "[t]here is nothing oxymoronic in finding that a plaintiff can perform a *limited* range of light work . . . where . . . the evidence shows that the plaintiff can perform some, though not all, of the exertional requirements of a particular range. *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) (emphasis in original). For simple issues, the regulations, without expert testimony, are alone sufficient to determine disability. Yet, "in more complex cases" such as when a claimant's exertional level is not clear, "a person . . . with specialized knowledge would be helpful." SSR 83-12 at *2.

Here, during the ALJ hearing, the ALJ proposed the following hypothetical to the VE:

> The individual is occasionally able to lift and or carry including upward pulling 20 pounds, and frequently lift and or carry including upward pulling 10 pounds.
> *The individual is able to sit for six of eight hours and stand and or walk for six of eight hours but would need to be able to alternate between sitting and standing in place every half hour.*
> The individual could occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, crouch and crawl. The individual would never be able to climb ladders, ropes or scaffolds.
> Would . . . need to avoid all hazards including machinery and heights, or dangerous machinery and heights. And would need to avoid concentrated exposure

---

[1] This is because "[s]uch an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." *Id.* (quoting SSR 83-12, at *4).

to fumes, odors, dust, gases or other pulmonary irritants.

The individual would be capable of performing unskilled work or work with an SVP of no more than two, in a non-production oriented work setting with no more than occasional interaction with public, co-workers and supervisors. Given those limitations would the individual be able to perform any of the claimant's past work?

R. 59-60 (emphasis added). In response to the ALJ's hypothetical, the VE testified that there would be work in the local or national economy that the individual in the hypothetical could perform. R. 60. Additionally, the VE noted three unskilled positions at the light exertional level that would satisfy the ALJ's hypothetical. *Id.* The VE testified that the jobs proposed are consistent with the Dictionary of Occupational Titles and is based "from [her] many years working with people and jobs." R. 61.

Although "a good deal of walking and standing" is "primary difference between sedentary and *most* light jobs," the VE's testimony that Plaintiff can perform light work, even with an alternate sitting and standing limitation, is not necessarily contrary to the regulations. SSR 83-10 at *5 (emphasis added); *see* SSR 83-12 at *4; *Martin v. Barnhart*, 240 F. App'x 941, 946 (3d Cir. 2007) ("SSR 83–12 does not automatically dictate a finding of disability where an individual is limited by a sit/stand option. Rather, SSR 83–12 indicates that a VE should be consulted, and here, one was.").

In conclusion, because the ALJ found that Plaintiff needed to alternate sitting and standing in place every half hour, it was proper for the ALJ to rely on the VE's testimony to determine whether there were jobs in the local and national economy that Plaintiff could perform. Therefore, based on the VE's testimony, substantial evidence supports the ALJ's RFC finding that Plaintiff can "perform light work . . . except he must be able to alternate between sitting and standing in place every one-half hour . . . ." R. 16.

## V. RECOMMENDATION

For the reasons appearing above, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1.    Plaintiff's motion for summary judgment be **DENIED**. ECF No. 11.

2.    The Commissioner's motion for summary judgment be **GRANTED** for the reasons set forth. ECF No. 13.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: April 2, 2015                                    /s/ *James E. Seibert*
                                                                   JAMES E. SEIBERT
                                                                   UNITED STATES MAGISTRATE JUDGE